IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DELIA GARCIA DIAZ | § | CASE NO. 05-94877-H1-11 |
| Debtor | § | (Chapter 11) |
| | § | |

## Debtor's First Amended Disclosure Statement

Comes now, Delia Garcia Diaz, Debtor-in-Possession herein, and files this her First Amended Disclosure Statement pursuant to the provisions of Section 1125 of Title 11 of the United States Code.

### TABLE OF CONTENTS

| Topic | Page |
|---|---|
| I. Introduction | 3 |
| II. Nature of Chapter 11 Reorganization Proceedings | 5 |
| III. Consideration in Voting on Chapter 11 Plan | 7 |
| IV. History of the Debtor | 9 |
| A. Background | 9 |
| B. Events Leading to Chapter 11 Filing | 10 |
| C. Operation and Present Condition of the Debtor While in Chapter 11 | 12 |
| V. Anticipated Future of the Debtor | 13 |
| VI. Source of information for this Disclosure Statement | 14 |

VII.       Disclaimer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VIII.      Professional Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IX.        Description of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

X.         Summary of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

           A.       Other Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

XI.        Pending Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

XII.       Alternatives to the Plan Proposed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

           A.       Conversion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

           B.       Dismissal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

           C.       Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

XIII.      Federal Income Tax Consequences to Creditors . . . . . . . . . . . . . . . . . . . . . . . 26

XIV.       Means for Implementation and Execution of the Plan . . . . . . . . . . . . . . . . . . . 27

XV.        Modification of Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

XVI.       Disclosure Required by the Bankruptcy Code . . . . . . . . . . . . . . . . . . . . . . . . . 27

XVII.      Fraudulent and Preferential Transfers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

XVIII.     Other Bankruptcies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

XIX.       Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## NOTICE TO CREDITORS AND PARTIES IN INTEREST

**THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN WHICH IS NOT CONTAINED IN THIS DISCLOSURE STATEMENT, NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATIONS OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR THE DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

## I.
## INTRODUCTION

On October 16, 2005, the Debtor filed a Voluntary Petition for Reorganization under Chapter 11 of the Bankruptcy Code (hereinafter the "Code"). The Debtor has remained in possession of her property pursuant to the provisions of 11 U.S.C. §§1144 and 1107. These Bankruptcy Code Sections provide that the Debtor shall retain possession of and manage her property during the pendency of the Bankruptcy Proceeding. The Debtor has retained the law firm of Tow & Koenig as Counsel for the Debtor under a general retainer. The law firm has continued to represent the Debtor in these proceedings.

The first meeting of creditors pursuant to §341 of the Code was held on January 16, 2006 at 10:00 a.m. at the Federal Courthouse in Houston, Texas.

This Disclosure Statement ("Disclosure Statement") is provided pursuant to 11 U.S.C. §1125 to all of the Debtor's known creditors and other parties-in-interest in connection with the solicitation of acceptance of the Debtor's Plan of Reorganization (the "Plan") filed by the Debtor-in-Possession. **A Summary of the Plan, listing each class and treatment of class of creditors is set forth on pages 17 - 23 of this Disclosure Statement. In addition, a listing of each creditor, by class,**

**payment method and amount is attached hereto as Exhibit "A" and fully incorporated herein by reference.**

This Disclosure Statement contains important information about the Plan.  The purpose of this Disclosure Statement is to provide such information as would enable a hypothetical, reasonable creditor typical of the holders of claims in this reorganization case to make an informed judgment in exercising its vote to either accept or reject the Plan.  The Debtor has prepared this Disclosure Statement in order to disclose that information which, in his opinion, is material, important, and necessary to an evaluation of the Plan.

**THE PLAN  IS NOT A PART OF THIS DISCLOSURE STATEMENT AND MUST BE REVIEWED INDEPENDENTLY.**

This Disclosure Statement must be approved by the Bankruptcy Court and/or District Court, after notice and hearing, prior to the solicitation of creditors with respect to their acceptance of the Plan.

Your vote on the Plan is important.  In order for the Plan to be deemed "accepted" by creditors, Sixty-Six and Two-Thirds Percent (66-2/3%) in amount of claims and more than Fifty Percent (50%) in number of claims voting in each class must accept the Plan.  In the event the Plan is not accepted by any class, the Debtor will request confirmation of the Plan in accordance with the provisions of 11 U.S.C. §1129(b).  Whether or not you expect to be present at the Confirmation Hearing, you are urged to fill in, date, sign and properly mail the Ballot to Julie M. Koenig, 10077 Grogans Mill Rd., Ste. 145, The Woodlands, Texas 77380, Attorney for the Debtor.

## II.

## <u>NATURE OF CHAPTER 11 REORGANIZATION PROCEEDINGS</u>

Chapter 11 of the Bankruptcy Code is a remedial statute designed to effect the rehabilitation and reorganization of financially distressed individuals and entities to maximize the return to the Debtor's unsecured creditors.   The statutory aims of reorganization proceedings include the following:

(a)     preservation of the Debtor's property as a "going concern" and the preservation of any going concern value of the Debtor's business and property;

(b)     avoidance of the forced and destructive liquidation of the Debtor's assets;

(c)     the protection of the interest of the creditors, both secured and unsecured;

(d)     the restructuring of the debts of the Debtor and her finances to enable him to retain those assets necessary to rehabilitate his finances and produce the greatest recovery for his creditors.

While the formulation and confirmation of a Plan of Reorganization is the principal function of a Chapter 11 case, Congress recognized in 11 U.S.C. Section 1123(a)(5)(d), that the sale of all or any part of the property of the estate and the distribution of all or part of the property of the estate among those having an interest in the property is also a legitimate function of a Chapter 11 proceeding.   Therefore, a Plan may affect the interest of all parties and creditors, reject executory contracts and provide for prosecution and/or settlement of the Debtor's claims against third parties. For a Plan to be confirmed by the Court, the Code requires that the Court finds that the Plan has received the favorable votes of certain requisite classes and that the Plan be "fair, equitable and feasible," as to any dissenting classes of creditors.   A more detailed description of the voting requirements of a Plan is set forth on pages 6 - 8 of this Disclosure Statement.

To be determined "fair and equitable", a Plan must comply with the so-called "absolute priority rule". The absolute priority rule requires that beginning with the most senior rank of claims of creditors against the Debtor, each class in descending rank or priority must receive full and complete compensation before any inferior or junior classes may participate in the distribution. The Plan must be accepted by the affirmative vote of a majority of creditors holding two-thirds in amount of claims filed and allowed by each class, unless adequate provisions are made for the classes of descending creditors. The foregoing is a brief summary of the requirements for a Plan and should not be relied upon for voting purposes. Creditors are urged to consult their own counsel before making any decisions on a Plan filed herein.

In addition to the above, 11 U.S.C. §1125 requires that the Debtor compile a Disclosure Statement which provides "adequate information" to creditors before anyone may solicit acceptance of a Chapter 11 Plan. This Disclosure Statement is prepared in accordance with Section 1125 to provide "adequate information" to the creditors in this proceeding. Creditors are urged to consult with their own individual counsel or each other and to review all of the pleadings filed in this bankruptcy proceeding in order to fully understand the disclosures made herein, the Plan of Reorganization filed herein, and any other pertinent matters in this proceeding.

This Chapter 11 proceeding is conducted under the supervision of a Bankruptcy Judge of the United States Bankruptcy Court for the Eastern District of Texas, Lufkin Division. Pursuant to the Code, the Court may:

    (a)     authorize the Debtor, as Debtor-in-Possession, to operate her business and manage her properties;

    (b)     permit rejection of executory contracts;

    (c)     authorize the Debtor to issue certificates of indebtedness;

(d)    authorize the Debtor-in-Possession to lease or sell the properties of the Debtor;

(e)    grant or deny relief from the stay or any suit against the Debtor and of any acts or proceedings to enforce a lien against the Debtor's properties; and

(f)    approve and confirm any Plans of Reorganization.

## III.
## CONSIDERATIONS IN VOTING ON THE CHAPTER 11 PLAN

**Operation of Chapter 11.**  Chapter 11 of the Bankruptcy Code permits the adjustment of secured debts, unsecured debts, and equity interests. A Chapter 11 Plan may provide less than full satisfaction of senior indebtedness and payment of junior indebtedness or may provide for return of the stock in a Debtor's corporation to its equity owners absent full satisfaction of indebtedness provided that an impaired class does not vote against the Plan. In this proceeding, as the Debtor is an individual, all payments under the Plan shall be by check or certified funds.

If an impaired class votes against the Plan, implementation of the Plan is not necessarily impossible. Provided that the Plan is fair and equitable and that each class is afforded treatment as allowed by and defined in the Bankruptcy Code, treatment of a particular class may be very broadly defined as providing to a creditor the full value of its claim. The value of that creditor's claim is determined by the Court and balanced against the treatment afforded the dissenting class of creditors. If the latter is equal to or greater than the former, the Plan may be confirmed over the dissent of that class, depending on junior claims and interests.

In the event a class is unimpaired, it is automatically deemed to accept the Plan. A class is unimpaired if:

1.    Its rights after confirmation are the same as existed (or would have existed absent any default) before the commencement of the Chapter 11 case, that any existing defaults are cured or provided for under the plan, and the class is reimbursed actual damages; or

2.      The allowed claims of the class are paid in full in cash as they are matured.

If there is no dissenting class, the test for approval by the Court of a Chapter 11 Plan is whether the Plan is in the best interest of the creditors and interest holders and is feasible.

**IN SIMPLE TERMS, A PLAN IS CONSIDERED BY THE COURT TO BE IN THE BEST INTEREST OF CREDITORS AND INTEREST HOLDERS IF THE PLAN WILL PROVIDE A BETTER RECOVERY TO THE CREDITORS AND INTEREST HOLDERS THAN THEY WOULD OBTAIN IF THE DEBTOR WERE LIQUIDATED AND THE PROCEEDS OF THE LIQUIDATION WERE DISTRIBUTED IN ACCORDANCE WITH THE BANKRUPTCY LIQUIDATION PRIORITIES. IN OTHER WORDS, IF THE PLAN PROVIDES CREDITORS AND INTEREST HOLDERS WITH MONEY OR OTHER PROPERTY OF VALUE EXCEEDING THE PROBABLE DIVIDEND IN LIQUIDATION BANKRUPTCY THEN THE PLAN IS IN THE BEST INTEREST OF CREDITORS AND INTEREST HOLDERS (THE COURT, IN CONSIDERING THIS FACTOR, IS NOT REQUIRED TO CONSIDER ANY OTHER ALTERNATIVE TO THE PLAN OTHER THAN LIQUIDATION BANKRUPTCY).**

In considering feasibility, the Court is only required to determine whether the Plan can be accomplished by the Debtor.  This entails determining:

A.      The availability of cash for payments required at confirmation;

B.      The ability of the Debtor to make payments called for under the Plan; and

C.      The absence of any other factor which might make it impossible for the Debtor to accomplish that which  it promises to accomplish in the Plan as contemplated in the Plan.

In addition, in order to confirm a Plan the Court must find, among other things, that the Plan was proposed in good faith and that the Plan and its proponent is in compliance with the applicable provisions of Chapter 11.

These determinations by the Court occur at the hearing on confirmation of a Plan.  The Court's judgment on these matters does not constitute an expression of the Court's opinion as to whether the Plan is a good one or an opinion by the Court regarding any debt instrument or equity

interest or security interest issued to creditors under the Plan. Rather, the Court's judgment is merely that the Plan complies with the applicable Code provisions and has garnered sufficient votes by its creditors for confirmation.

**UPON SATISFACTION OF §1129(a) GENERAL CONFIRMATION STANDARDS, BUT EXCLUDING PARAGRAPH (8), THE DEBTOR MAY REQUEST THAT THE COURT CONFIRM THE PLAN OVER THE DISSENT OF A CLASS. THE COURT IS REQUIRED TO CONFIRM IF THE PLAN MEETS WITH THE CRAM DOWN STANDARDS SET FORTH IN §1129(b). THIS PROCEDURE IS THE PROCESS BY WHICH A DISSENTING CLASS OF CREDITORS OR INTERESTS IS BOUND BY THE TERMS OF A CHAPTER 11 PLAN WITHOUT ITS CONSENT. THIS PLAN MAY BE CONFIRMED WITH REFERENCE TO A NON-ACCEPTING IMPAIRED CLASS IF TWO STANDARDS ARE MET: (1) THE PLAN DOES NOT DISCRIMINATE UNFAIRLY AGAINST THE CLASS, AND (2) THE PLAN IS FAIR AND EQUITABLE WITH REFERENCE TO THE CLASS. UPON SUCH DETERMINATION, THE COURT WILL BIND THE DISSENTING CREDITOR(S) TO THE PLAN WITHOUT ITS CONSENT.**

**IV.**
**HISTORY OF THE DEBTOR**

**A.   Background.**

The Debtor and her ex-husband, Ruben Diaz, leased two properties where they operated a bar and an after hours club. The first property, the Las Palmas Club, was located at 4660 Telephone Road. Las Palmas Club operated from 6:00 p.m. until 2:00 a.m. Monday through Sunday. They had live bands on the weekends and sold beer, sodas, bottled and mineral water on a cash only basis. Monday through Thursday they employed one security guard from Houston Harris Division Patrol, ("HHDP"), and three security guards from HHDP on Friday through Sunday who worked at Las Palmas from around 10:00 p.m. until closing. The arrangement between the two clubs is more clearly set forth below.

The second leased property was at 5618 Telephone Road where they operated an after hours club called Las Palmas #2 from 1:00 a.m until 6:00 a.m on Friday through Sunday.   This club sold non-alcoholic beer, sodas, bottled and mineral water only on a cash basis.

During this time the Debtor has young children and was not working at either club.   Instead she handled the books and records for both businesses including negotiating with contractors and suppliers, paying bills, etc.   Ruben Diaz operated the clubs as general manager, working for the Debtor.  The liquor license for Las Palmas Club was in the Debtor's name as was the business.

On the weekends when Las Palmas #2 was open, one of the security guards from Las Palmas would go to Las Palmas #2 at 1:00 a.m. to guard the door at that business.  A second guard from Las Palmas would go to Las Palmas #2 at 2:00 a.m when Las Palmas closed.   The third security guard remained at Las Palmas until the band had left, the money counted and inventory taken, all customers were out of the club and the parking lot was cleared.  Only then would he join the other 2 security guards at Las Palmas #2 where they stayed until closing.

On April 20, 1997 on a foggy morning between the hours of 1:00 a.m and 2:15 a.m., a customer at the Las Palmas Club, Carlos Salazar, a/k/a Chupa Cabra, shot a pistol into the night killing Jose Pardo who was sitting in a car in the parking lot.  The gun that he shot belonged to Ruben Diaz.  Although a stupid thing to do, Mr. Salazar did not mean to kill Mr. Pardo and did not even know he was in a car in the parking lot - he just shot out the back door, presumably for some type of "fun".

**B.    <u>Events Leading to Bankruptcy.</u>**

Mr. Pardo left behind 3 minor children, Demetria Garcia, Blanco V. Pardo and Vidal Pardo, Jr.  In 2001, Patricia Garcia as next friend of Demetria Garcia, Blanco V. Pardo and Vidal Pardo,

Jr. filed a wrongful death cause of action in the 80th Judicial District Court of Harris County, Texas, in Cause No. 2001-35678 styled *Patricia Garcia, as Next Friend of Minor Children, Demetria Garcia, Blanco V. Pardo and Vidal Pardo, Jr. v. Houston Harris Division Patrol, Inc., Delia Garcia Diaz and Ruben Diaz.*   Maxie Strong later filed a Third Party Petition against the Debtor.  The Debtor believed that Mr. Von Blon, Counsel for Patricia Garcia, et al. was not seeking a judgment against her personally, only against her insurance, and did not hire a lawyer or defend herself in the lawsuit.

Houston Harris Division Patrol, Inc., Margaret Garcia and Mauricio Garcia ultimately settled with the Plaintiffs for $150,000, ("the Settling Defendants").  The Debtor did not appear at trial and on June 21, 2004, the Court entered a Final Default Judgment against the Debtor in the amount of $1,500,000 of which she was to be credited for the $150,000 paid by the settling Defendants.

During the pendency of the lawsuit, the Debtor and her husband divorced, effective in December 23, 1997

On September 9, 1999, the Debtor entered into a mortgage with June Foust to purchase the property located at 5618 Telephone Road for $130,000.  She has since paid off this mortgage and owns the property free and clear.  Las Palmas #2 operated on this property.  The property is currently leased to Refugio Medina for $3,500 per month.  This lease terminates in 2011.

On November 29, 1999, the Debtor entered into a mortgage with Gene Groves to purchase 4678 Telephone Road for $130,000.  She has since paid off this mortgage and owns the property free and clear.  That property is leased to Continental Motors for $1,500.00 per month.  The lease with Continental Motors terminates in 2009.

Also on July 30, 1999, the Debtor entered into a mortgage with Maxie Strong to purchase 4660 and 4670 Telephone Road for $271,000.   This is the property is currently leased to Alberto Valdez for $3,300.00 per month.  This lease terminates in 2011  As of the date of filing the Debtor still owed $185,770.21 on that mortgage with monthly payments of $2,829.85

On September 4, 2004, the Plaintiffs filed an Abstract of Judgment against the Debtor's real property.  On February 18, 2005, the Plaintiffs filed an Amended Abstract of Judgment against the Debtor's real property for $1,5000,000 without giving credit for the amount paid by the Settling Defendants.

On February 7, 2005, the Constable posted all of the Debtor's non-exempt real property for sale on March 1, 2005.  The Debtor filed a Voluntary Petition under Chapter 13 of Title 11 of the United States Code, Case No. 05-32961-H1-13 on February 28, 2005, to stop the Constable's sale.  On August 19, 2005, the Chapter 13 proceeding was dismissed as being over the jurisdictional limits for a Chapter 13 bankruptcy filing.

The property was again posted for sale by the Constable and on October 16, 2005, the Debtor filed the instant Chapter 11 Proceeding.

### C.    Operation and Present Condition.

Since the date of filing the Debtor has continued to manage her properties, collect the lease payments, maintain insurance on the properties, and pay her ad valorem taxes as they came due.  She has obtained Court permission to hire, and has hired, the firm of Zimmerman, Axelrad, Meyer, Stern & Wise, P.C. as Special Counsel to file a bill of review on her behalf seeking to overturn the judgment by the Plaintiff.  She anticipates filing an Amended Motion to Employ the firm to research the validity of the liens created by the filing of the Abstract of Judgment and Amended Abstract of

Judgment.   She has prepared and prosecuted Objections to Proofs of Claim filed by Harris County/City of Houston and Houston Independent School District.   She is preparing to file objections to the proofs of claim filed on behalf of the Plaintiffs and their Counsel, Mr. Von Blon.

## V.
## ANTICIPATED FUTURE OF THE DEBTOR

As set forth above, the anticipated future of the Debtor is to continue her business operations to satisfy the payments outlined in his Plan.  The Debtor has compiled a "Liquidation Analysis" to predict the outcome and payment to its creditors if the Debtor was to be liquidated under Chapter 7 of Title 11 of the United States Code.  A true and correct copy of the "Liquidation Analysis" is attached hereto as Exhibit "B" and incorporated herein by reference.   A six month financial projection is attached hereto as Exhibit "C" and fully incorporated herein by reference.

As of the date of filing, the Debtor's indebtedness was as follows:

1.     Secured debt

| Creditor | Security | Claim Amount |
|---|---|---|
| Maxie Strong | 4660 & 4670 Telephone Rd. | $210,800.00 |
| John Barker | Attorney's fees as per Security Agreement on Maxie Strong Note | $21,000.00 |
| Maxie Strong | Abstract of Judgment | $6,407.00* |
| Houston ISD | Business Property Taxes | $5,584.33** |
| Harris Cty/Houston | Business Property Taxes | $7,899.62** |
| Entertainment by J & J, Inc. | Abstract of Judgment | 13,000.00*** |
| Riecke Baumann | Abstract of Judgment | 3,000.00*** |

| | |
|---|---|
| **Total Secured Debt:** | **$267,690.97** |

\* With interest at the rate of 5%.
\*\* The Debtor paid these taxes post-petition as they came due.
\*\*\* With interest at the rate of 2.32%.

| | | |
|---|---|---|
| 2. | Undisputed Unsecured Debt: | $1,671,629.55 |
| 3. | Priority Debt: | $14,731.83. |

## VI.
## SOURCE OF INFORMATION FOR THIS DISCLOSURE STATEMENT

The information contained herein has not been subject to a certified audit. Much of the information, descriptions, values and facts contained herein are derived from the Debtor's experience in the leasing business, and the unverified opinions of third parties. Accordingly, the Debtor does not warrant or represent that the information contained herein is correct, although great effort has been made to be accurate. This Disclosure Statement contains, a summary of the Plan itself which is controlling in the event of any inconsistencies. Each creditor is urged to review the Plan prior to voting.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein and the delivery of this Disclosure Statement shall not under any circumstances create an implication that there has not been any change in the facts as set forth herein since the date hereof. All the terms herein have the same meanings as in the Plan unless the context requires otherwise.

## VII.
## <u>DISCLAIMER</u>

EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS, NO REPRESENTATIONS CONCERNING THE DEBTOR, HIS ASSETS, PAST OR FUTURE BUSINESS OPERATIONS, OR THE PLAN ARE AUTHORIZED NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON  IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN.  ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE  PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. THE DEBTOR IS NOT ABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ACCURACY.  THE FACTUAL INFORMATION REGARDING THE DEBTOR, THE DEBTOR'S ESTATE, HIS ASSETS AND LIABILITIES HAS BEEN DERIVED FROM THE DEBTOR'S RECORDS, THE DEBTOR'S SCHEDULES, PUBLIC RECORDS AND RELATED DOCUMENTS SPECIFICALLY IDENTIFIED HEREIN.

NEITHER THE DEBTOR NOR HER COUNSEL CAN WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT ANY INACCURACY, ALTHOUGH HE DOES NOT HAVE ACTUAL KNOWLEDGE OF ANY INACCURACIES.

APPROVAL OF THIS DISCLOSURE STATEMENT IS NOT A FINDING BY THE COURT THAT THE INFORMATION CONTAINED HEREIN IS ACCURATE AND COMPLETE.  FURTHER, APPROVAL OF THE DISCLOSURE STATEMENT IS NOT AN INDICATION BY THE COURT OF THE CONFIRMABILITY OF THE PLAN.

THE ABILITY OF THE DEBTOR TO ACHIEVE HIS PROJECTIONS IS SUBJECT TO SUBSTANTIAL RISKS FROM SUCH FACTORS AS, BUT NOT LIMITED TO, THE CONTINUED PROFITS FROM LEASING THE BUSINESSES.  THEREFORE, ANY PROJECTIONS PREPARED BY THE DEBTOR DOES NOT CONSTITUTE A GUARANTY OF RESULTS.

## VIII.
## PROFESSIONAL FEES

The Debtor engaged the law firm of Tow & Koenig, PLLC. under a general retainer to represent the Debtor in this Chapter 11 proceeding. The Court entered an order approving retention of the law firm on December 23, 2005. The Voluntary Petition was originally filed by Mr. Peter Weston. The Court determined that he had a conflict of interest as he was owed funds from the prior Chapter 13 proceeding. Debtor's Counsel has not filed any interim applications, as of this date, for compensation. The Debtor anticipate his legal fees will be in the range of $15,000 to $20,000, including the retainer of $10,000, which will be partially drawn down by the law firm after notice to all creditors. Any further fees paid to Debtor's Counsel shall remain in its trust account pending approval of the Counsels' fees by the Bankruptcy Court.

The Debtor obtained Court approval to employ the law firm of Zimmerman, Axelrad, Meyer, Stern & Wise, P.C. to act as Special Counsel for the Estate on January 9, 2006. They received a retainer of $20,000 paid by a third party. They currently have a fee application pending before the Court in the amount of $15,443.46. Any remaining funds shall be refunded to the third party.

## IX.
## DESCRIPTION OF ASSETS AND VALUE

The Debtor's non-exempt asset consist of the following:

| Asset | HCAD Value | Business Value* | Market Value |
|---|---|---|---|
| 4660 & 4670 Telephone Road | $223,794.00 | $25,086.60 | $223,794.00 |
| 5618 Telephone Road | $191,358.00 | $210,000.00 | $210,000.00 |

| | | | |
|---|---|---|---|
| 4678 Telephone Road | $153,354.00 | 90,000.00 | $153,354.00 |
| Cash, Funds on Deposit & Deposits | $5,480.08 | $5,480.08 | $5,480.08 |
| | | | |
| **Total Value:** | **$573,986.08** | **$330,566.68** | **$592,628.08** |
| | | | |

\*   The business value is determined by the net cash flow over a 5 year period as this is the duration of the majority of the leases on the properties.

## X.
## SUMMARY OF THE PLAN

The following is a brief summary of certain provisions of the proposed Plan of Reorganization to assure that the creditors affected understand its provisions. This summary should not be considered as solicitation for acceptance of that Plan. Additionally, creditors should not rely on this summary to decide whether or not to vote in favor of or against the Plan, but are expressly referred to the Plan itself since it contains many provisions which will not be summarized herein.

The Plan of Reorganization proposes to increase profits from the shrimping business through increased shrimp prices and cost control, which should bring funds sufficient to pay 15% to her unsecured creditors.

The Debtor's Plan of Reorganization will provide for classification of creditors in accordance with the United States Bankruptcy Code.

**Class 1- Administrative Expenses**. Class 1 is unimpaired. Class 1 are Claims entitled to priority by Section 507(a)(1) of the Bankruptcy Code and will consist of fees for services rendered and expenses incurred by the Court appointed Counsel and other professional persons for the Debtor prior to the effective date of the Plan, as the same are finally approved and allowed by final order

of the Court, and any other expenses incurred during the course of the Chapter 11 proceeding that have not yet been paid. The members of this class include Julie M. Koenig, Lead Counsel for the Debtor, and Robert A. Axelrad and Elizabeth Bruman of Zimmerman, Axelrad, Meyer, Stern & Wise, P.C., Special Counsel for the Debtor.

All claims in this class shall be paid in cash and in full in such amounts as may be allowed and approved by the Court on the effective date or after such claims are finally allowed, whichever is later, by the Debtor to the extent of available funds, or such claims may be paid in accordance with any agreement or waiver. The anticipated total fees to be paid in this class are in the range of $15,000 to $20,000, to the Debtor's Attorneys, inclusive of the retainer. The fees of Mr. Axelrad and Ms. Bruman are currently pending as a fee application before the Court in the amount of $15,443.46.

The anticipated payment on these claims are set forth on Exhibit "A" attached hereto.

**Class 2 - The United States Trustee.** Class 2 is unimpaired and consists of the post-confirmation claim of the office of the United States Trustee for its fees from the date of confirmation until the Chapter 11 file is closed by the Bankruptcy Clerk. These fees are based on the amount of disbursements made by the Debtor and are paid on a quarterly basis. The Reorganized Debtor shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. §1930 (a)(6) until such time as this Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismissing this case. After confirmation, the Reorganized Debtor shall file with this Bankruptcy Court and shall serve on the United States Trustee a financial report for each month, or portion thereof, that this Chapter 11 case remains open in a format prescribed by the United States Trustee.

In the event that the Debtor owes pre-confirmation U.S. Trustee's fees on the date of confirmation, the Debtor shall pay all past-due fees to the U.S. Trustee on or before the effective date of the Plan.

**Class 3 - Priority Claim of the Internal Revenue Service.** Class 3 is impaired and consists of the priority claim of the Internal Revenue Service, ("IRS"), in the amount of $14,731.83. This claim shall be paid in equal monthly installments of $245.53 without interest over a 60 month period. The unsecured claim of the IRS shall be treated in Class 8 below.

**Class 4 - Secured Claims of Harris County/City of Houston and Houston ISD.** Class 4 is impaired and consists of the secured claim of Harris County/City of Houston in the amount of $6,824.92 and $6,918.23, respectively. These entities have a statutory lien on the Debtor's homestead and all of her other real property. The 2005 taxes will be paid by the Debtor when they become due.

Post-petition secured ad valorem taxes will be paid in the ordinary course of business and failure to do so shall result in a default under the terms of the confirmed Plan.

Default of the Plan shall be defined as the failure of the proponent of the plan to make payments or perform any action required to be made under the terms of the confirmed plan.

In the event of a default, there will be full reinstatement of the administrative collection powers and rights of this ad valorem Taxing Authority as they existed prior to the filing of the bankruptcy petition in this case, including, but not limited to, the assessment of taxes, the filing of Notices of Tax Liens and the powers of levy, seizure and sale.

**Class 5A - Secured Claim of Maxie Strong and John Barker.** Class 5A is unimpaired and consists of the secured mortgage claim of Maxie Strong in the amount of approximately

$210,800.00 and John Barker in the amount of $21,000.00. Ms. Strong's claim is secured by a lien on the Debtor's real property located at 4670 and 4660 Telephone Road, Houston, Texas. This claim shall be paid in monthly installments under the terms of the mortgage. The monthly payment to Ms. Strong is approximately $2,829.85. There remains approximately 8 more years on the note.

Mr. Barker's claim is secured according to the security agreement on the above referenced property as reasonable attorney's fees in the event of a bankruptcy or other collection requirements. Mr. Barker's claim shall be paid in equal monthly installments of $350.00 over a 60 month period without interest.

**Class 5B - Secured Judgment Claim of Maxie Strong.** Class 5B is impaired and consists of the secured judgment claim of Maxie Strong in the amount of $6,407.02 with interest at the rate of 5%. Maxie Strong has a lien on all of the Debtor's non-exempt real property by virtue of an Abstract of Judgment filed on March 2, 2004. This claim shall be paid in monthly installments in the amount of 139.35 over a 60 month period. The first payment shall be due on the 15th day of the first full month after the effective date of the Plan.

**Class 6 - Secured Judgment Claim of Entertainment by J & J, Inc. and Riecke Baumann.** Class 6 is impaired and consists of the secured judgment claim of Entertainment by J & J, Inc., ("Entertainment), and Riecke Baumann in the amount of $13,000.00 and $3,000.00, respectively, with interest at the rate of 2.32%. This judgment claim is secured by a lien on all of the Debtor's non-exempt real property by virtue of an Abstract of Judgment filed on June 1, 2004.

Entertainment's claim shall be paid in equal monthly installments of $252.05 over a 60 month period. Riecke Baumann's claim shall be paid in equal monthly installments of 58.16 over a 60

month period.    The first payment shall be due on the 15th day of the first full month after the effective date of the Plan.

**Class 7 - Unsecured  Claims Under $2,000.00**.  Class 7 is impaired and consists of claims of unsecured creditors with claims under $2,000.00.    There is 1 claim in Class 7 for a total of $1,015.00  This claim shall be paid in full within 30 days of the effective date of the Plan.   In addition, any creditors in Class 8 below may elect to reduce their claim to $2,000.00 and receive treatment in Class 7 of this Plan.  Such election must be made in writing on the ballot which will be served on all creditors after this Disclosure Statement is approved by the Court and returned to:

> Julie M. Koenig
> Tow & Koenig, PLLC.
> 10077 Grogans Mill Rd., Ste. 145
> The Woodlands, Texas 77380

on or before the deadline set forth on the Order Approving Disclosure Statement, and Fixing Time for Filing Acceptances or Rejections of Plan, Combined with Notice Thereof.

If a creditor in Class 8 makes the election to accept payment under Class 7 of the Plan, the payment of $2,000.00 shall be in full and complete satisfaction of their claim and will not receive treatment in Class 8 of the Plan.  The names of each creditor in this Class and the amount to be received is set forth on Exhibit "A" attached hereto.

**Class 8 - Unsecured Creditors Over $2,001.00 .**    Class 8 is impaired and consists of the unsecured creditors with indebtedness in excess of $2,001.00.    There are 8 claims in Class 8 for a total of $1,670,614.55.

Claims in Class 8 shall be paid in monthly installments with the first payment due on the 15th day of the first full month following the effective date of the Plan and continuing over a five year

period. It is anticipated that members in this class shall receive 15% of their claims. The estimated monthly payments in this class are $4,176.54.

As set forth above, the creditors in Class 8 each have the one-time option of electing to be treated in Class 7 of the Plan and receive a total of $2,000.00 in full and complete satisfaction of their claim and will not receive treatment in this Class 8. Such election must be made in writing on the ballot which will be served on all creditors after this Disclosure Statement is approved by the Court and returned to:

>Julie M. Koenig
>Tow & Koenig, PLLC
>10077 Grogans Mill Rd., Ste. 145
>The Woodlands, Texas 77380

on or before the deadline set forth on the Order Approving Disclosure Statement, and Fixing Time for Filing Acceptances or Rejections of Plan, Combined with Notice Thereof.

A.    **Other Provisions**

Notwithstanding confirmation of the Plan, the Court will retain jurisdiction (i) to determine the allowance of claims upon objection by a party-in-interest; (ii) to determine requests for payment of administrative claims and expenses, including compensation, entitled to priority under §507(a)(i) of the Code; (iii) to resolve disputes regarding interpretation of the Plan; (iv) to modify the Plan; (v) to implement provisions of the Plan; (vi) to adjudicate any cause of action brought by the Debtor or Trustee as representatives of the estate; (vii) to enter a final decree; and (viii) for other purposes.

## XI.
## PENDING LITIGATION

At the time of filing, there was no pending litigation against the Debtor.   Two adversaries were filed against the Debtor in the Chapter 11 Proceeding.   One was styled *Entertainment by J&J, Inc. v. Delia Garcia Diaz*, Adversary No. 06-3265.   It was settled for $16,000.00 and is treated in Class 6 of the Plan.   The second was styled *Garden City Boxing Club, Inc. v. Delia Garcia Diaz*, Adversary No. 06-3264.   It was settled for $15,000.00 and is treated in Class 8 of the Plan.

## XII.
## ALTERNATIVES TO THE PLAN PROPOSED

The Debtor expects that the Plan will enable it to realize the maximum benefits for all of its creditors.   However, if the Plan is not confirmed, the Debtor will continue to seek other avenues for reorganization.

### A.    **Conversion**

In the event no suitable alternative can be found, the Debtor would be compelled, as well as obligated, to recommend the conversion of the Chapter 11 case to a case under Chapter 7, and a subsequent liquidation by a duly appointed or elected Chapter 7 trustee.   The plan provides that property of the estate will vest in the reorganized Debtor thirty days after entry of the final confirmation order.   Creditors shall retain their ability to utilize rights under 11 U.S.C. Section 1112(b)(8).   Upon a conversion of this case to Chapter 7, all property re-vested in the Debtor under the Plan, or subsequently acquired, shall constitute property of the bankruptcy estate in the converted case.   Although the Debtor is of the opinion that a straight liquidation of the assets would not be in the best interest of the creditors generally, the following is likely to occur:

(i)     The newly appointed Chapter 7 trustee would have to become familiar with the Debtor's operations in order to evaluate all the Debtor's assets and liabilities;

(ii)    In addition to the duplication of efforts that would transpire as a result of the Chapter 7 trustee having to review documents and interview persons in order to become sufficiently acquainted with the Debtor's business, the Chapter 7 trustee would likely retain professionals to aid in administering the estate;

iii)    An additional tier of administrative expenses entitled to priority over general unsecured claims would be incurred.  Such administrative expenses would include Chapter 7 trustee's commissions and fees for the professionals likely to be retained; and

(iv)    There would likely be no distribution at all to the creditors until the case is ready to be closed.

The Debtor will allow the creditors and parties-in-interest to draw their own conclusions with respect to the delay associated with a Chapter 7 liquidation. It is certain that the above factors would result in an additional dilution to the projected dividend. The Debtor believes that such a speculative projection should be made by the creditors themselves.

The Debtor believes if the assets of the Debtor were liquidated through a court trustee there would be **no** dividends to the unsecured creditors. A true and correct copy of a Liquidation Analysis is attached hereto as Exhibit "B" and incorporated herein for all purposes.

### B.    Dismissal

Dismissal of the proceeding would, in the Debtor's opinion, lead to an unsatisfactory result. Dismissal would result in seizure of assets by the Plaintiffs with no return to the unsecured creditors. These actions would cause the Debtor to incur more expenses in the form of attorneys fees, etc., thereby leaving nothing for distribution to its creditors.

The Debtor has attempted to set forth possible alternatives to the proposed Plan. Accordingly, one should recognize that a vote against the Plan and the ultimate rejection of the Plan would not alter the present status of the Debtor. The vote on the Plan does not include a vote on alternatives to the Plan. There is no assurance what turn the proceedings will take if the Plan is rejected. If you believe one of the alternatives referred to above is preferable to the Plan and you wish to urge it upon the Court, you should consult your counsel.

The economy is the only risk posed to creditors that would result in an amendment or change in the Plan.

### C.    Default

Upon confirmation of a Chapter 11 Plan, the Plan operates as a contract between the Debtor and its creditors. A default occurs if the Debtor fails to make any required payments contained in the Plan. Each creditor, regardless of class, has the right upon a default under the plan to notify the Debtor and his Counsel of the default and allow ten (10) days for the Debtor to cure such default. Notice of default must be made in writing to the Debtor and his Counsel and mailed by certified mail, return receipt requested. The ten (10) day period shall begin on the date the Debtor execute the return receipt.

Notice of default shall be given to the following:

Delia Garcia Diaz
1415 Somercotes
Channelview, Texas 77530

and

Julie M. Koenig
Tow & Koenig, PLLC.
10077 Grogans Mill Rd., Ste. 145
The Woodlands, Texas 77380

If the Debtor fails to cure the default within the ten (10) day period, the Creditor sending

notice of default has the right to bring a lawsuit in the State District Court against the Debtor or to

apply to the Federal Bankruptcy Court for relief through dismissal of the Chapter 11 Proceeding.

## XIII.
## FEDERAL INCOME TAX CONSEQUENCES TO CREDITORS

The Debtor believes that the following discussion generally sets forth the Federal income tax

consequences to Creditors upon confirmation and consummation of the Plan.  No ruling has been

sought or obtained by the Debtor from the Internal Revenue Service ("IRS") with respect to any of

these matters.  The following discussion of Federal income tax consequences is not binding on the

IRS and is general in nature.  No statement can be made herein with respect to the particular Federal

income tax consequences to any Creditor.

**AS A RESULT OF THE COMPLEXITY OF THE APPLICABLE PROVISIONS OF
THE INTERNAL REVENUE CODE, EACH CREDITOR IS URGED TO CONSULT ITS
OWN TAX ADVISOR IN ORDER TO ASCERTAIN THE ACTUAL TAX CONSEQUENCES
TO IT, UNDER FEDERAL AND APPLICABLE STATE AND LOCAL LAWS, OF
CONFIRMATION AND CONSUMMATION OF THE PLAN.**

Creditors may be taxed on distributions they receive from the Estate.  The amount of the

income or gain, and its character as ordinary income or capital gain or loss, as the case may be, will

depend upon the nature of the Claim of each particular Creditor.  The method of accounting utilized

by a Creditor for Federal income tax purposes may also affect the tax consequences of a distribution. In general, the amount of gain (or loss) recognized by any such Creditor distributee will be the difference between (i) the Creditor's basis for Federal income tax purposes, if any, in the Claim and (ii) the amount of the distribution received. Whether the distribution will generate ordinary income or capital gain will depend upon whether the distribution is in payment of a Claim or an item which would otherwise generate ordinary income on the one hand or in payment of a Claim which would constitute a return of capital.

## XIV.
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

Implementation of the Plan requires entry of an order by the Bankruptcy Court confirming the Plan. The Plan is to be implemented, if accepted and approved by the Bankruptcy Court, in its entire form as filed on June 20, 2006.

## XV.
## MODIFICATION OF DISCLOSURE

The Debtor may propose amendments to or modification of this Disclosure Statement at any time prior to the confirmation, with leave of the Court. After confirmation, the proponent may, with the approval of the Court, so long as it does not materially or adversely affect the interests of the creditors or other parties-in-interest as set forth herein, remedy any defect or omission, reconcile any inconsistencies in this Disclosure Statement, or in the Order Confirming Disclosure Statement, in such a manner as may be necessary to carry out the purposes and intent of this Disclosure Statement.

## XVI.
## DISCLOSURE REQUIRED BY THE BANKRUPTCY CODE

The Bankruptcy Code requires the disclosure to the Bankruptcy Court of payments made or promised of the kind as set forth in Section 1129(a)(5) of the Bankruptcy Code. The Debtor retained

Julie M. Koenig of Tow & Koenig, PLLC, as Bankruptcy Counsel under a general retainer of $10,000.00. The Debtor further agreed to pay Julie M. Koenig's attorney's or paralegal's hourly rate for representation in excess of the general retainer.  The Debtor retained Robert Axelrad of Zimmerman, Axelrad, Meyer, Stern & Wise, P.C. as Special Counsel to the Estate under a general retainer of $20,000, paid by a third party.  The Debtor agreed to pay Mr. Axelrad's attorney's or paralegal's hourly rate for representation in excess of the general retainer. The  Bankruptcy Code requires that the Court approve all professional's fee applications prior to payment by a Debtor. Therefore, subject to Court approval, the Debtor has agreed to pay for the actual services rendered for representation in this bankruptcy case.

## XVII.
## FRAUDULENT AND PREFERENTIAL TRANSFERS

To the best of Debtor's knowledge and belief the only preferential or fraudulent transfer to occur within one year of the filing is the payment to Peter Weston of $17,005.00 in legal fees for representation in the prior Chapter 13 Proceeding. The Debtor shall seek to recover this preferential payment.

## XVIII.
## OTHER BANKRUPTCIES

The Debtor filed a Chapter 13 Proceeding on February 28, 2005 which was dismissed for lack of jurisdiction on August 19, 2005.

## XIX.
## CONCLUSION

The Debtor believes that approval of her Plan will provide an opportunity for its creditors to receive more money in the foreseeable future on their claims than would be received in a straight

liquidation by a trustee in a Chapter 7 case or from a distress sale of all the assets. If the Plan is not approved, the Debtor will continue to seek other reorganization alternatives, but liquidation might ensue, with the consequences as discussed above in relation to the liquidation alternative.

This Disclosure Statement is subject to the approval by the Bankruptcy Court after notice and hearing.

**THE APPROVAL BY THE UNITED STATES BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT WILL NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE DEBTOR'S PLAN OR A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

The Plan of Reorganization contains additional provisions and each creditor should review the provisions of the Plan with particularity.

The only risk factors in this proposed Plan is the ability of the Debtor to successfully continue leasing her properties within the time period set forth herein.

Respectfully submitted this 20th day of June, 2006.

DELIA GARCIA DIAZ

OF COUNSEL:

TOW & KOENIG, PLLC.

By: _____
JULIE M. KOENIG
State Bar No. 14217300
10077 Grogans Mill Rd., Ste. 145
The Woodlands, Texas 77380
281/681-9100 (Telephone)
281/681-1441 (Telecopier)
jkoenig@towkoenig.com